Shientag, J.
Petitioner’s eating place beer license was suspended for a period of five days after a hearing in accordance with the provisions of the Alcoholic Beverage Control Law. The order of suspension recited the finding of the State Liquor Authority that the licensee violated subdivision 6 of section 106 of the Alcoholic Beverage Control Law in that it suffered or permitted gambling on the licensed premises resulting in the arrest of Leonard Katz and Harry Tarowsky and others on or about October 31, 1949. The order of suspension further provided that it be publicly displayed upon the street door and window of the premises facing the street.
Subdivision 6 of section 106 provides that no person licensed to sell alcoholic beverages shall suffer or permit any gambling on the premise's or suffer or permit such premises to become disorderly.
Petitioner owns and operates a delicatessen store which has been testified to as being the largest in the country. It has been engaged in business at the same location for more than thirty years; it has from sixty-five to seventy employees and does an annual business of more than a million dollars. It has had an eating place beer license since the inception of the State Liquor Authority. During all this time its license has never been revoked, cancelled or suspended for any reason.
On Monday, October 31, 1949, at 11:45 p.m., Harry Tarowsky and Leonard Katz, officers of petitioner corporation, and five others, none of whom were patrons of the establishment, were engaged in a game of poker in petitioner’s storeroom located in the basement of its premises. The other participants included petitioner’s attorney who was also the brother-in-law of Leonard Katz, petitioner’s insurance broker and three close friends of petitioner’s officers. According to the report of the hearing commissioner, all were respectable businessmen. Testimony was given that they had been playing regularly for the past *365 twenty years usually at each other’s homes; that all of the games including the one in question, although for small stakes, were friendly, social games. There was never any “ cutting ” or any other aspect of professionalism. Neither petitioner, its oEcers nor any other person received any benefit from this game other than as participants on an equal basis with the other participants.
On the evening in question, two policemen in plainclothes, on the basis of an anonymous complaint, entered the premises, went down to the basement and found some six men seated around a table playing stud poker. There were some bills and some change in front of the participants and, according to the testimony, the stakes were five and ten cents and up to a quarter. All of the participants were arrested. One of the oEcers of petitioner corporation, Harry Tarowsky, was charged with violation of section 973 of the Penal Law in that he did keep and maintain a place used for gambling. The other persons were charged with disorderly conduct. The disorderly conduct charge was dismissed in the Magistrate’s Court and on the complaint of maintaining a place for gambling Tarowsky was discharged on his own recognizance by the Court of Special Sessions.
We shall assume for the purposes of this case that the term “ gambling ” as used in the Alcoholic Beverage Control Law has a broader connotation than that term as used in section 973 of the Penal Law.
We are not disposed to deal with the many hypothetical instances suggested by counsel and included within the literal dictionary definition of the term “ gambling ” as applied, for example, to games of bridge or dominoes, or checkers, for stakes. It suEces to hold that there was no basis for the finding of the State Liquor Authority that this single isolated instance of a game of poker played under the circumstances and in the manner hereinbefore described constituted “ gambling ” within the meaning of subdivision 6 of section 106, of the Alcoholic Beverage Control Law. That finding was arbitrary and was without substantial basis in fact and without basis in law.
The determination and order of the State Liquor Authority suspending the beer license of petitioner for five days should be annulled and set aside, with costs to the petitioner.
Peck, P. J., Glennon, Callahan and Van Voobhis, JJ., concur.
Determination unanimously annulled, with $50 costs and disbursements to the petitioner.